# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| HAROLD M. HOFFMAN, | Civil Action No. 17-3540 (CCC) |
| Plaintiff, | |
| v. | REPORT & RECOMMENDATION |
| PHARMACARE US INC., | |
| Defendant. | |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by *pro se* Plaintiff Harold M. Hoffman ("Plaintiff") to remand this matter to New Jersey Superior Court, Bergen County, Law Division [ECF No. 5]. Defendant Pharmacare US Inc. ("Defendant") opposes Plaintiff's motion [ECF No. 6]. Pursuant to Local Civil Rule 72.1(a)(2), the Honorable Claire C. Cecchi, U.S.D.J., referred the present Motion to the Undersigned for Report and Recommendation. Having considered that parties' written submissions pursuant to Federal Rule of Civil Procedure 78, for good cause shown and for the reasons set forth herein, it is respectfully recommended that Plaintiff's motion to remand be **GRANTED**.

I. **BACKGROUND**

Plaintiff filed the instant putative class action in the Superior Court of New Jersey, Bergen County, Law Division, on April 17, 2017 alleging, *inter alia*, various violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 ("NJCFA") and common law fraud in connection with Defendant's product, Sambucol Cold & Flu Relief ("Sambucol"). [1] *See* Complaint, ECF No. 1-1

---

[1] Plaintiff is an attorney and a well-known filer of putative class-action lawsuits in this District. In federal court alone,

1

("Compl."). Plaintiff's proposed class consists of "all New Jersey purchasers of Sambucol, who purchased Defendant's product during the one year period preceding the filing of this suit." Compl. at p. 8.

As set forth in the Complaint, Plaintiff alleges that he purchased Sambucol, an over-the-counter homeopathic product in tablet form, in January of 2017, for the purchase price of $14.99. *Id.* at ¶ 1. According to Plaintiff, while Sambucol claims to be a homeopathic formulation effective in, and to be used for, the prevention, cure, mitigation, and therapeutic treatment of cold, flu, muscle ache, headache, fever, chills, dry throat and cough, the tablet contains "nothing at all . . . therapeutic for the foregoing conditions and/or symptoms." *Id.* at p. 1-2. Plaintiff further asserts that Defendant's false claims regarding the efficacy of Sambucol "were calculated and designed to lead members of the class to believe that Sambucol was a lawful, appropriate therapy for disease." *Id.* at p. 6. The Complaint seeks the following: (1) compensatory damages; (2) treble and other statutory damages under NJCFA; (3) punitive damages; and (4) attorney's fees and costs.

On May 18, 2017, Defendant removed the action to this Court pursuant to 28 U.S.C §1441, citing this Court's federal diversity jurisdiction under 28 U.S.C § 1332(a). *See* Notice of Removal, ECF No. 1 ("NOR"). Although Plaintiff's Complaint does not contain a specified amount of damages, Defendant contends that removal is proper because the parties are diverse and because the amount in controversy exceeds $75,000. *See id.* On May 26, 2017, Plaintiff filed the instant motion to remand this matter asserting that the amount in controversy does not exceed the jurisdictional threshold of $75,000. *See* ECF No. 5.

---

Plaintiff, proceeding *pro se* both individually and on behalf of a putative class, has instituted no less than 35 actions since 2007, with 30 having been filed since 2012. Notably, each case was originally filed in state court and subsequently removed by the defendant(s).

## II. LEGAL STANDARD

A civil action brought in state court may be removed by the defendant to a federal district court if the district court has original jurisdiction over the claim. 28 U.S.C. § 1441(a); *see also Samuel–Bassett v. Kia Motors Am.,* 357 F.3d 392, 398 (3rd Cir. 2004). Federal district courts have original jurisdiction on the basis of diversity of citizenship where: (1) the matter in controversy exceeds the sum or value of $75,000; and (2) there is diversity of citizenship between each plaintiff and each defendant in the case. *See, e.g., Kaufman v. Allstate N.J. Ins. Co.,* 561 F.3d 144, 148 (3d Cir. 2009) (citing 28 U.S.C. § 1332(a)(1)). Under § 1332(a)(1), "the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot,* 507 F.3d 188, 193 (3d Cir. 2007) (citing *Samuel–Bassett,* 357 F.3d at 396); *Morgan v. Gay,* 471 F.3d 469, 473 (3d Cir. 2006). Any doubts must be resolved in favor of remand. *Samuel–Basset,* 357 F.3d at 403.

The parties do not dispute that complete diversity exists. Plaintiff is a citizen of New Jersey and Defendant is a corporate entity incorporated in Delaware with its principal place of business in California. Accordingly, because the Court is satisfied that there is complete diversity between the parties, subject matter jurisdiction turns on whether the amount in controversy exceeds $75,000.

"The Third Circuit has provided a 'roadmap' for evaluating whether a case removed from state court should be remanded because the amount in controversy does not exceed $75,000." *Venuto v. Atlantis Motor Grp., LLC*, No. CV173363RBKKMW, 2017 WL 4570283, at *2 (D.N.J. Oct. 13, 2017) (citing *Frederico*, 507 F.3d at 196). First, if the parties dispute jurisdictional facts, the party carrying the burden of proof must establish federal jurisdiction by a preponderance of the evidence. *Frederico*, 507 F.3d at 194 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298

U.S. 178 (1936)). Even if jurisdictional facts are not expressly in dispute, a "court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence." *McNutt*, 298 U.S. at 189.

Second, if jurisdictional facts are not in dispute, or the court is satisfied with the sufficiency of the jurisdictional proof, the analysis turns to whether the jurisdictional amount is met with "legal certainty." *Frederico*, 507 F.3d at 196. The legal certainty test has two alternative strands. *Id.* If the complaint "specifically avers that the amount sought is less than the jurisdictional minimum," a defendant "seeking removal must prove to a legal certainty that [the] plaintiff can recover the jurisdictional amount." *Id.* at 196–97 (relying on *Morgan*, 471 F.3d at 469). A plaintiff is entitled to this deferential standard only if the complaint "specifically (and not impliedly) and precisely (and not inferentially) states that the amount sought" shall not exceed the jurisdictional minimum. *Id.* at 196. Alternatively, if the "plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," then "the case must be remanded if it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount." *Id.* at 197 (emphasis in original) (relying on *Samuel–Bassett*, 357 F.3d at 392).

### III. DISCUSSION

Although the parties disagree as to the burden of proof required in evaluating whether the amount in controversy has been met, with Plaintiff arguing that a preponderance of the evidence standard should apply, and Defendant arguing that the legal certainty standard applies, the parties do not dispute the jurisdictional facts and Plaintiff's Complaint does not explicitly limit his claims to an amount less than $75,000. Accordingly, because the jurisdictional facts are not in dispute and because Plaintiff has not limited damages below the jurisdictional threshold, this matter must

4

be remanded if it appears to a "legal certainty" that Plaintiff cannot recover the requisite jurisdictional amount. *Frederico*, 507 F.3d at 197. Determining whether it is legally certain that Plaintiff's claims do not seek recovery in excess of $75,000 requires an analysis of the recoverable damages under the claims set forth in the Complaint. Although not quantified, Plaintiff's Complaint seeks relief in the following categories: (1) compensatory damages; (2) treble and other statutory damages under the NJCFA; (3) punitive damages; and (4) attorney's fees and costs.

Plaintiff alleges that he suffered $14.99 in actual damages, while also seeking statutory treble damages pursuant to Defendant's alleged violation of the NJCFA. A private party may state a claim under the NJCFA if he or she can demonstrate ascertainable loss caused by a defendant's violation of the statute. *See* N.J.S.A. 56:8–19; *Thiedmann v. Mercedes–Benz USA, LLC*, 183 N.J. 234, 246 (2005). Because Plaintiff has alleged an ascertainable loss of approximately $14.99, the statute further requires courts to award plaintiffs threefold the actual damages resulting from a violation, which in this case, would increase Plaintiff's potential award to approximately $44.97. *See* N.J.S.A. 56:8–19.

Plaintiff's Complaint also seeks civil penalties mandated by the NJCFA. *See* N.J.S.A. § 56:8-13. Under the NJCFA, any person who violates any of the provisions of the act shall be liable "to a penalty of not more than $10,000 for the first offense and not more than $20,000 for the second and each subsequent offense." N.J.S.A. § 56:8-13. The NJCFA further provides that the "penalty shall be exclusive of and in addition to any moneys or property ordered to be paid or restored to any person in interest pursuant to section 2 of [§ 56:8-14] or [§ 56:8-15]." N.J.S.A. § 56:8-13.

In this context, it appears that any monetary penalties available under N.J.S.A. 56:8-13 are separate from those available to a private person. While this provision provides for penalties of up

to $30,000 to punish defendants for certain unlawful conduct directed towards senior citizens and/or disabled persons, these penalties are not available under private causes of action and can only be sought by the Attorney General. *See Sacchi v. ABC Fin. Servs., Inc.*, No. CIV. 14-1196 FLW, 2014 WL 4095009, at *4 (D.N.J. Aug. 18, 2014) (citing *Weinberg v. Sprint Corp.,* 173 N.J. 233 (2002)). Thus, as a private individual, Plaintiff is limited to the treble damages provided by N.J.S.A. 56:8-19, and accordingly, Plaintiff's claims total, at most, approximately $44.97 in compensatory and treble damages.

Next, the Court turns to Plaintiff's request for punitive damages and attorneys' fees. For the purposes of calculating the amount in controversy, reasonable attorneys' fees and punitive damages must be counted if they are available under New Jersey state law. *See Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) ("[A]ttorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action."); *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993) ("punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied" unless "such damages are unavailable as a matter of law") (quoting *Gray v. Occidental Life Ins. Co.*, 387 F.2d 935, 936 (3d Cir. 1968)). Where, as in the present case, "punitive damages and attorneys' fees would need to represent the bulk of any possible recovery to satisfy the amount in controversy," those claims are subject to "particularly close scrutiny." *Sacchi*, 2014 WL 4095009, at *4 (citing *Packard*, 994 F.2d at 1046).

New Jersey courts have ruled that although treble damages awarded under the NJCFA are both compensatory and punitive in nature, it does not preempt additional recovery of punitive damages for common-law fraud. *Venuto*, 2017 WL 4570283, at *3 (citing *Wildstein v. Tru Motors, Inc.*, 227 N.J. Super. 331, 335 (L.D. 1988)). Accordingly, Plaintiff may seek punitive

6

damages for his common law fraud claim. Such damages are governed by the Punitive Damages Act, N.J. Stat. Ann. § 2A:15–5.09, et. seq ("NJPDA"), under which, to recover punitive damages, the plaintiff must demonstrate:

> by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.

*Id.* at 5.12(a). The NJPDA defines actual malice as "an intentional wrongdoing in the sense of an evil-minded act." *Id.* at 5.10. It defines "wanton and willful disregard" as a "deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." *Id.* Mere negligence is insufficient to prove a claim for punitive damages. *Pavlova v. Mint Mgmt. Corp.,* 375 N.J. Super. 397, 405 (App. Div. 2005).

The NJPDA also provides a list of types of evidence that the trier of fact must consider in determining whether punitive damages should be granted, including: "(1) The likelihood, at the relevant time, that serious harm would arise from the defendant's conduct; (2) The defendant's awareness or reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct; (3) The conduct of the defendant upon learning that its initial conduct would likely cause harm; and (4) The duration of the conduct or any concealment of it by the defendant." N.J.S.A. § 2A:15–5.12(b).

As pled in the Complaint, Plaintiff's common law fraud claim fails to allege the requisite intent and culpability necessary to justify such an award. For the court to award punitive damages, there must be "a showing of culpability in excess of that needed to state the bare bones elements

7

of the underlying tort." *Sacchi*, 2014 WL 4095009, at *5 (citing *Lo Bosco v. Kure Engineering Ltd.,* 891 F.Supp. 1020, 1034 (D.N.J. 1995)). As noted above, punitive damages are available under New Jersey law in fraud claims only if the plaintiff demonstrates that the defendant acted with the level of culpability required by the NJPDA. *Onyiuke v. Cheap Tickets, Inc.,* No. 09–CV–891, 2009 WL 5218064 at *3 (D.N.J. Dec. 31 2009) (citations omitted).

Although Defendant contends that Plaintiff's "scandalous allegations" make a significant punitive award conceivable, such award is not available because Plaintiff merely sets forth a barebones claim of fraud, without any additional element, such as malice. Plaintiff merely alleges that Defendant deliberately and knowingly engaged in deception and concealment. *See* Compl. at p. 22. However, Plaintiff fails to plead any facts showing or supporting a plausible inference that Defendant may have engaged in the type of conduct that constitutes an "evil minded act" or "knowledge of a high probability of harm." *See* N.J.S.A. § 2A:15–5.10. Moreover, Plaintiff fails to allege any facts which would indicate that Defendant was aware its product might not contain the necessary ingredients to cure cold and flu symptoms, nor has Plaintiff indicated what steps, if any, Defendant took to conceal its conduct. Accordingly, because Plaintiff's Complaint fails to allege malice or wanton recklessness with respect to his common law fraud claim, Plaintiff cannot recover punitive damages.

Because the Court finds that Plaintiff may not recover punitive damages on his claims as pled, the requisite amount in controversy may only be satisfied if potential attorneys' fees and costs, aggregated with $44.97 in compensatory and treble damages, would satisfy the requisite amount in controversy. Under the NJCFA, the court shall award "reasonable attorneys' fees, filing fees and reasonable costs of suit" to any person who suffers "any ascertainable loss of moneys" as a result of unlawful conduct under the act. N.J.S.A. § 56:8-19. Here, Plaintiff alleges he suffered

"ascertainable loss when [he] received, for [his] money, an over-priced product that is objectively less than, inferior to, and different from, the product promised by Defendant." *See* Compl. at p. 14. Therefore, because Plaintiff alleges he suffered a loss of money due to Defendant's violation of the NJCFA, attorneys' fees would be available to the Plaintiff, and must be considered in determining whether the requisite amount in controversy is satisfied. *Sacchi*, 2014 WL 4095009, at *6.

Although Plaintiff includes a demand for attorneys' fees in all six of the counts in his Complaint, in support of his to motion to remand, Plaintiff contends that under the present structure of the case, there can be no recovery of counsel fees because he is a *pro se* attorney. *See* ECF No 5-1 at p. 4. According to Plaintiff, a *pro se* attorney representing himself is not entitled to attorneys' fees because the lawsuit does not involve a lawyer-client relationship. *See id*. In response, Defendant argues that the "CFA does not carve out from its mandatory award of fees attorneys who represent themselves *pro se*." ECF No. 6 at p. 10.

Although the NJCFA provides attorneys' fees for any person who suffers "any ascertainable loss of moneys," this Court has held that an attorney appearing *pro se* is not entitled to attorneys' fees. *See Capogrosso v. State Farm Ins. Co.*, No. CIV.A. 07-CV-5324DMC, 2009 WL 3447068, at *4 (D.N.J. Oct. 21, 2009) (finding an attorney appearing *pro se* is not incurring costs on behalf of another and therefore, is not entitled to attorneys' fees). Because the existing case law counsels against allowing *pro se* attorneys to collect attorneys' fees, and because Defendant cites no authority to support its claim that Plaintiff is entitled to such fees, it appears to the Court that Plaintiff would indeed be precluded from collecting attorneys' fees in this action.

However, even assuming that Plaintiff would in fact be eligible for such attorneys' fees, "a claim for an unspecified amount of attorneys' fees does not necessarily satisfy the jurisdictional

9

minimum." *Zanger v. Bank of America, N.A.,* Civ. No. 10–CV–2480, 2010 WL 3910142 at *4 (D.N.J. Oct. 1, 2010); *see Frederico,* 507 F.3d at 199. In order to satisfy the jurisdictional minimum, the Court would have to award "a preposterously high amount of attorneys' fees and costs in connection with a nominal amount of compensatory damages" of approximately $44.97, which would be "inconsistent with the amount in controversy requirement." *Sacchi*, 2014 WL 4095009, at *6 (finding that the amount in controversy could not be met when the compensatory damages were approximately $30 and the remainder of the amount would have to be comprised solely of attorneys' fees).

Moreover, courts have routinely rejected the argument that a plaintiff could meet the amount in controversy by relying primarily on the award of attorneys' fees, rather than compensatory damages. *E.g., Lauchheimer v. Gulf Oil,* 6 F.Supp.2d 339, 346 (D.N.J. 1998) (holding that amount in controversy could not be satisfied by potentially excessive award of attorneys' fees where plaintiff, if successful, would receive very small compensatory damages); *Flail v. Travelers Companies,* Civ. No. 98–CV–1254, 1998 WL 709296 at *3 (E. D. Pa. Oct. 6, 1998) (finding to a legal certainty that amount in controversy could not exceed $75,000 by aggregating potential attorneys' fees where compensatory damages could not exceed $5,000). In light of the foregoing assessment of the amount potentially recoverable by Plaintiff, the Court finds that it appears to a legal certainty that Plaintiff could not recover damages in excess of the jurisdictional threshold based on the claims set forth in his Complaint.

Beyond the damages sought in the Complaint, Defendant cites to Plaintiff's pre-filing settlement offer as proof of the requisite amount in controversy. According to Defendant, prior to filing his Complaint, Plaintiff contacted Defendant and offered to settle this matter for "close to six figures." *See* ECF No. 6 at p. 6. Defendant asserts that Plaintiff's settlement offer demonstrates

that Plaintiff places a value on his claims in excess of the jurisdictional threshold. In response, Plaintiff contends the that pre-filing settlement demand, which does not identify a numerical figure, cannot be considered in determining the amount in controversy because it bears no relationship to the true value of the case, and goes against public policy, which encourages parties to settle cases. *See* ECF No. 8.

"[U]nder a long-standing rule, federal diversity jurisdiction is generally determined based on the circumstances prevailing at the time the suit was filed." *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 152 (3d Cir. 2009). Accordingly, the amount in controversy is assessed "by considering only the circumstances that existed" when the complaint at issue was filed. *Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016). Therefore, because Plaintiff's settlement demand predated the filing of the Complaint, it cannot be considered in determining whether the amount in controversy has been met.

Based on the foregoing, the Court finds to a legal certainty that Plaintiff's claims cannot exceed $75,000. Accordingly, because Defendant has failed to carry its burden of establishing that this matter satisfies the requisite amount in controversy, there is no basis for this Court's jurisdiction over this case.

**IV.  CONCLUSION**

In light of the foregoing, and the Court having considered this matter pursuant to Fed. R. Civ. P. 78;

**IT IS** on this 14th day of December, 2017,

**RECOMMENDED** that Plaintiff's motion to remand [ECF No. 5] be **GRANTED**; and it is further

**ORDERED** that pursuant to L. Civ. R. 72.1 and Fed. R. Civ. P. 72, objections to this Report and Recommendation shall be filed within fourteen (14) days after service hereof. Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. The Clerk of Court is directed to serve the parties with electronic notice upon filing this Report and Recommendation.

    s/James B. Clark, III
**HONORABLE JAMES B. CLARK, III**
**UNITED STATES MAGISTRATE JUDGE**